UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No.: 8:21-cr-64-CEH-TGW

EUGENIO HURTADO SANCHEZ
_____/

## SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

Defendant, Eugenio Hurtado Sanchez, by and through the undersigned counsel, hereby files this Sentencing Memorandum and respectfully moves for a downward variance from the sentence recommended by the United States Sentencing Guidelines ("USSG"), and states as follows:

### I.    Offense Conduct and Procedural History

On February 18, 2021, Mr. Hurtado Sanchez was indicted on a two (2) count indictment for his role in a conspiracy which alleges that from an unknown date and continuing through on or about January 30, 2021, Mr. Hurtado Sanchez and codefendants conspired to possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. §960(b)(1)(B)(ii). [Dkt. #1]. Following initial appearance, the Court ordered that Mr. Hurtado Sanchez be detained. [Dkt. #25].  On May 19, 2021, Mr. Hurtado Sanchez appeared before the Honorable Judge Thomas G. Wilson and pleaded guilty to count one of the indictment.  On June 8, 2021, Your Honor accepted Mr.

1

Hurtado Sanchez's plea. [Dkt. #50].  He will be before the Court for sentencing on August 19, 2021, at 1:30 p.m.

## II.    Sentencing Guidelines

The PSR, applying the 2018 Guidelines Manual, calculated a total offense level of 33 resulting in an advisory range of 135 to 168 months incarceration.  Mr. Hurtado Sanchez has a criminal history score of zero, establishing a criminal history category of I.   He was given a downward adjustment for clearly demonstrating acceptance of responsibility under U.S.S.G. §3E1.1.  Mr. Hurtado Sanchez is Safety Valve eligible as he meets the criteria set forth in subdivisions (1)-(5) of subsection (a) §5C1.2, pursuant to U.S.S.G. §2D1.1(b)(18).

As this Court is well aware, a United States District Court is no longer limited by the guidelines since the matrix is merely considered advisory. *United States v. Booker*, 543 U.S. 220, 245-267 (2005).  The United States Supreme Court in *Booker* gave judges the flexibility to use the sentencing range produced by the Guidelines as a "starting point" or "initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Moreover, in *United States v. Talley*, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when fashioning a sentence in the post-*Booker*, advisory Sentencing Guidelines era.  "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines." *Id.* at 786.  Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense

and the history and characteristics of the defendant; 2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. *Id. See also 18 U.S.C. §3553(a).* "The weight to be accorded any given §3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006).

## III.   A Variance is Appropriate Under 18 U.S.C. §3553

### a.   *History and Characteristics of Mr. Hurtado Sanchez*

Mr. Hurtado Sanchez is 41 years old and has no known criminal history. (See PSR at ¶¶32-34).  He was born on September 9, 1979, in Buenaventura, Colombia, and is the result of the union of his parents, Eugenio Hurtado and Senovia Sanchez. (See PSR at ¶40).  His father is a fisherman and lumberjack and his mother is a homemaker.  His mother struggles with asthma and his father suffers from prostate issues and vision problems. *Id.*  Mr. Hurtado Sanchez has a good relationship with his parents, although they are upset about his arrest.

Mr. Hurtado Sanchez has seven (7) siblings and maintains good relationships with them. *Id.*  Their parents did the best they could to raise them

despite living in poverty and made sure there was enough food to eat and clothing to wear. (See PSR at ¶41). Mr. Hurtado Sanchez only attended school through first or second grade and is able to sign his name but otherwise cannot read or write. At the young age of eight (8), he began working and assisted his father fishing and doing lumberjack work to help earn money to feed his large family. *Id.* Mr. Hurtado Sanchez is the product of bullying and was bullied because he was poor and could not read. He was physically, emotionally, and psychologically bullied/abused by other children and even some adults in the community. *Id.*

Prior to his arrest, Mr. Hurtado Sanchez was financially supporting his parents by paying for food and medical treatment. (See PSR at ¶42). He also supported his wife and children. He is married and has been with his partner for approximately twenty-three (23) years and the couple have three (3) children together, ages twenty-one (21), eighteen (18), and ten (10).

He maintains a good relationship with his wife and children. (See PSR at ¶43). The family resides in a two (2) bedroom, one (1) bath rental home. They lived in the rental home for the past eighteen (18) to twenty (20) years and pay $50 per month for rent. (See PSR at ¶45). Mr. Hurtado Sanchez also has a daughter (age 17) from a previous relationship which he tried to help out financially as much as he could. (See PSR at ¶43).

Prior to his arrest, Mr. Hurtado Sanchez was having a hard time making ends meet due to lack of job opportunities. He needed money to provide for his family and assist with his parents' care due to their medical conditions. Out of

4

desperation, he made the decision to participate in the criminal activity which ultimately led to his position before the Court.  Mr. Hurtado Sanchez's family is deeply saddened by this situation but remain supportive as demonstrated by the character letters submitted to the Court.

While incarcerated, Mr. Hurtado Sanchez wishes to further his education and would like to obtain his GED.  He also wishes to learn to read and write in Spanish and English.  He is eager to work and earn money to send to his family. Moreover, he would like to participate in any available vocational training programs. (See PSR at ¶53).

     b. *Nature of Offense*

Mr. Hurtado Sanchez understands the seriousness of his actions and the potential harm to the community and fully accepts responsibility for his role in the criminal activity.  He was the first of the defendants to enter a plea in the matter on April 20, 2021 [Dkt. # 34] and has been cooperative with the government.

He requests the Court consider his minor role in the overall, much larger drug smuggling enterprise.  Mr. Hurtado Sanchez was not the captain nor did he understand the scope and structure of the criminal activity.  He did not plan or organize it or exercise any decision-making authority.  Instead, he was one of three (3) mariners operating a vessel from one point to another, in a chain of several other moves the contraband would travel.

Mr. Hurtado Sanchez does not deny he possessed an understanding of the illegal purpose of the trip; however, he did not know any further details concerning

the overall operation, such as the ultimate destination of the contraband. He was recruited by a low-level participant who had dealings with intermediaries within a much larger drug trafficking organization. Mr. Hurtado Sanchez was not involved in acquiring drugs, organizing the drug smuggling operation, or planning the route of the trip. He had no decision-making authority, leadership responsibility, or operational discretion.

c. *Need for Deterrence*

Mr. Hurtado Sanchez submits that a sentence below the guideline range is appropriate and reasonable and would afford adequate deterrence. This incident was nonviolent, his criminal history category is I, and he took immediate responsibility for his conduct. A lengthy prison sentence is not necessary as punishment for the instant offense or to deter other from committing such offenses. His criminal activity represents a rare occurrence.

The Sentencing Commission recognizes that offenders like Mr. Hurtado Sanchez who have no prior arrests pose the lowest risk of recidivism. *See U.S. Sent. Comm'n, Recidivism and the "First Offender" at 14 (May 2004)*. The Sentencing Commission has concluded that recidivism data demonstrates that "first offenders" generally pose the lowest risk of recidivism. *See, e.g., U.S. Sent. Comm'n, "Recidivism Among Federal Offenders: A Comprehensive Overview," at 18 (2016)*.

d. *Need to Avoid Unwarranted Sentencing Disparities*

The Court must also consider the need to avoid unwarranted sentencing

6

disparities.  This section outlines some recent cases of a similar nature in the Middle District of Florida and the sentences imposed.

- *United States v. Vianey Renteria Cuero*, Case No.: 8:20-cr-198-MSS-AAS.

On June 18, 2020, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

On or about June 11, 2020, the U.S. Coast Guard interdicted defendant's vessel in the waters of the Eastern Pacific Ocean, approximately one hundred and fifty (150) nautical miles southeast of the Costa Rica-Panama border.  The crew of the boat was observed jettisoning bales of suspected contraband.  The Coast Guard team recovered forty-seven (47) bales from the jettison field containing approximately one thousand three hundred and sixty-two (1,362) kilograms of cocaine.  The defendant's total offense level started at thirty-eight (38).  He received a reduction for acceptance of responsibly and Safety Valve.  He also received a §5k1.1 downward departure, a reduction for role in offense, as well as a downward variance.  On December 16, 2020, the defendant was sentenced to fifty-one (51) months incarceration.

- *United States v. Juan Diego Contreras Flores*, Case No.: 8:18-cr-390-T-17JSS.

On August 30, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of

cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

In August of 2018, the defendant and five (5) codefendants engaged in a cocaine smuggling venture. Their go-fast vessel was interdicted by the U.S. Coast Guard approximately 202 nautical miles southwest of Isle de Socorro, Mexico. Law enforcement recovered approximately sixty-five (65) bales of cocaine with an approximate weight of 1,307 kilograms. The defendant's base offense level was initially thirty-eight (38). He received a reduction for acceptance of responsibly and Safety Valve. He also received a §5k1.1 downward departure and downward variance. On April 5, 2019, the defendant was sentenced to 87 months incarceration.

- *United States v. Rosemberth Garcia Torres*, Case No.: 8:18-cr-00427-WFJ-JSS.

On September 25, 2018, the defendant was charged in a two-count indictment with conspiracy with intent to possess and distribute 5 kilograms or more of cocaine, and possession with intent to distribute 5 kilograms or more of cocaine while onboard a vessel subject to the jurisdiction of the United States.

On or about September 11, 2018, the defendant and two codefendants were on a small vessel that was transporting cocaine when it was interdicted by the U.S. Coast Guard in international waters. Sixty (60) bales of cocaine, weighing 1,200 kilograms, were discovered onboard. The defendant's initial base offense level was thirty-eight (38). He received reductions for acceptance of responsibility and

Safety Valve.  On February 25, 2019, the defendant was sentenced to 98 months incarceration.

## IV.    Conclusion

Based on the circumstances set forth above, a downward variance should be considered in this case.  It is respectfully suggested that the Court exercise its discretion and impose a sentence below the advisory guideline range.

DATED this 12th day of August 2021.

Respectfully submitted,

*/s/ Vanessa L. King*
Vanessa L. King
The Law Firm of Vanessa L. King
Florida Bar No. 90849
vanessa@vlklegal.com
146 Second Street North, Suite 310-C
St. Petersburg, Florida 33701
P: (727) 233-4233
F: (727) 265-1865

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of August 2021, the undersigned counsel electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

AUSA Tereza Zambrano Ohley

*/s/ Vanessa L. King*
Vanessa L. King
The Law Firm of Vanessa L. King
Florida Bar No. 90849
vanessa@vlklegal.com
146 Second Street North, Suite 310-C
St. Petersburg, Florida 33701
P: (727) 233-4233
F: (727) 265-1865
