UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No.: 8:21-cr-64-CEH-TGW

LUIS FERNANDO TELLES RIVERA
_____ /

SENTENCING MEMORANDUM ON BEHALF OF
DEFENDANT, LUIS FERNANDO TELLES-RIVERA

COMES NOW the Defendant, LUIS FERNANDO TELLES-RIVERA ("Mr. Telles-Rivera"), by and through his undersigned counsel, and hereby files the following Sentencing Memorandum setting forth factors that the Court should consider in determining what type and length of sentence is sufficient but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). In support, Mr. Telles-Rivera states the following:

I.    INTRODUCTION

On June 8, 2021, Mr. Telles-Rivera entered a guilty plea to Count I of the Indictment charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and punishable under 21 U.S.C. § 960(b)(1)(B)(ii).

Mr. Telles-Rivera does not dispute the actions giving rise to the charges contained in the Plea Agreement and he is very remorseful for his actions. He accepts

full responsibility for his conduct and respectfully requests that this Court consider the following information in mitigation of his sentence and utilize it to fashion an appropriate sentence.

## II.   SENTENCING UNDER BOOKER

In 2005, the United States Supreme Court determined that judges are no longer required to apply the United States Sentencing Guidelines ("Guidelines") in a mandatory fashion when determining the appropriate sentence for a defendant. United States v. Booker, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Since then, a sentence must be "reasonable" for it to be considered lawful.   See United States v. Kimbrough, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007); Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 24 445 (2007).

### a.  The Sentence Must be Sufficient, but not Greater than Necessary

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   Gall, 552 U.S. at 49.   "[T]he Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however."   Id.   "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.   In so doing, he may not presume that the Guidelines range is reasonable."   Id. at 49-50.

2

### b. The Sentencing Guideline Calculation in this Case

A Presentence Investigation Report ("PSR") has been prepared by the United States Probation Office. The PSR placed the total offense level at 35, with a criminal history Category of I, and calculated a Guideline range of 168 to 210 months, with two (2) to five (5) years of supervised release to follow.

### III.   ANALYSIS OF THE 18 U.S.C. § 3553(a) FACTORS

The Court must consider the § 3553(a) factors, weigh them properly, and fashion an appropriate sentence based on the facts of the case.   United States v. White, 416 F.3d 1313, 1318 (11th Cir. 2005) (per curiam).   Pursuant to 18 U.S.C. § 3583(e), the Court must consider sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

### a. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

In considering the nature and circumstances of the offense and the characteristics of the Defendant, the Court can consider "written and oral arguments presented by the defendant," "supportive letters," whether the defendant shows "any remorse," and other mitigating factors in determining the appropriate sentence. United States v. Waters, 799 F.3d 964, 975 (8th Cir. 2015).

In this case, Mr. Telles-Rivera is a fifty-five (55) year old man and is a citizen of Colombia.   He grew up living in a wooden hut with his six (6) siblings under extreme poverty conditions. His father left the family to be with another woman when Mr.

3

Telles-Rivera was fifteen.   As the eldest child, he began fishing and collecting wood to help his mother support the family. Mr. Telles-Rivera developed his ability to navigate the local waters working as a fisherman.   He has two (2) adult children and a thirteen (13) year old son that resides with Maria Eugenia Asprilla, the child's mother, and woman Mr. Telles-Rivera has maintained a fifteen-year relationship with. On April 26, 2021, Mr. Telles-Rivera lost his father to complications from COVID-19.

Mr. Telles-Rivera was known to be a fisherman in his town for many years. However, he had been working in construction prior to the start of COVID-19   The COVID-19 epidemic greatly affected the Colombian economy and his ability to earn a living.   As many businesses were forced to shut down, Mr. Telles-Rivera became desperate and he needed to try to earn money.   Unlike here in the United States, there were no online job opportunities, and no work from home jobs or Government assistance that his family could count on.   Further, there was no ban on foreclosures or evictions. His family also did not have the support, assistance, and protection of their government that Americans have. That is, there was no stimulus money to look forward to, no government grants, or government sponsored payment delays for poor people in Colombia.

Armed with the knowledge that many men were desperate enough to entertain offers they previously would not have, recruiters for the drug cartels were known to go to towns and ask random citizens for information regarding who they knew to possess skills for fishing, navigating, and piloting vessels. In this case, Mr. Telles-Rivera was

4

initially told that he was hired to help salvage a sunken boat. Shortly thereafter, he was informed that the trip in question was to transport drugs, and that due to his years of experience fishing and navigating the local waters, he was to navigate and drive the vessel.

As Mr. Telles-Rivera was hired to drive the vessel, he was technically the captain. However, Mr. Telles-Rivera did not have any authority, nor did he have any duties normally associated with being a captain beyond driving the vessel to the location as instructed. For example, Mr. Telles-Rivera had no authority over the others on the vessel and he had no authority to choose the route to the destination. He also had no decision-making authority. Additionally, he was not allowed to check the vessel prior to the trip, nor could he have cancelled the trip if he had been able to check the vessel and found that it was not sea worthy. In sum, he was hired to drive and not ask questions. He also was to be paid 20 million Colombian Pesos, which amounts to approximately $5,324.00.

### b. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

Mr. Telles-Rivera was born in Colombia and had never been to the United States prior to being brought here by the U.S. Coast Guard. The destination provided to Mr. Telles-Rivera was Golfito, Costa Rica. As "the possession of drugs for

immediate personal use is not a criminal offence in Costa Rica,"[1] Mr. Telles-Rivera was not able to appreciate the criminal nature of his actions and did not recognize any possible connection to the United States.  In fact, Costa Rica "is clearly making an effort to abandon the traditional zero tolerance approach and its view of drug-related issues is gradually shifting to a focus on justice, health, safety, education, and development."[2]

Mr. Telles-Rivera has no previous criminal record and grew up respecting the law.  Notably, he had no idea that he was breaking the law in the United States with his actions.  Although desperate and in need, he would not have participated in the voyage if he was aware that he would face penalties and judgment in the United States. Mr. Telles-Rivera has fully cooperated and provided the Government with everything it has asked of him.  His willingness to quickly accept responsibility and cooperate evidences his respect for the law.

The average life span for a male in Colombia is 71.5 years.[3]  As Mr. Telles-Rivera turned 55 years old on January 7, 2021, it is anticipated that he will live for just

---

[1] druglawreform.info, Costa Rica, http://www.druglawreform.info/en/country-information/central-america/costa-rica/item/5017-costa-rica (last visited 8/25/2021).

[2] Id.

[3] worldlifeexpectancy.com, Colombia: Life Expectancy, https://www.worldlifeexpectancy.com/colombia-life-expectancy#:~:text=Colombia%3A%20Life%20Expectancy%20According%20to%20the%20latest%20WHO,Colombia%20a%20World%20Life%20Expectancy%20ranking%20of%2075 (last visited 8/16/2021).

short of another 16 years, which calculates to Mr. Telles-Rivera having 190 months remaining to live. This means that the Guidelines call for Mr. Telles-Rivera to spend between 88% and 111% of the rest of his life in prison in this case. As such, the Guidelines call for Mr. Telles-Rivera to spend the rest of his expected natural life and beyond in prison. Based upon the totality of the circumstances, a just sentence is one that does not require Mr. Telles-Rivera to spend more than 87 months in prison, which represents approximately forty-six (46) percent of the anticipated life Mr. Telles-Rivera has remaining.

> **c. To Afford Adequate Deterrence to Criminal Conduct, Protect the Public from Further Crimes of the Defendant and Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner**

Prior to the events resulting in his being detained and brought to the United States, Mr. Telles-Rivera had never been to this country, nor had he tried to travel here. And, he has no plans of returning to the United States once he is released from prison. Mr. Telles-Rivera has experienced life in Pinellas County jail during the COVID-19 epidemic. He has had his movement extremely limited and dealt with multiple quarantines due to repeated COVID-19 outbreaks in the jail. Additionally, considering that he faces a potential 851 enhancement resulting in a 15 minimum mandatory sentence should he perpetrate another similar act, this along with his experience in the American criminal justice system during COVID-19 provides adequate deterrence to any further criminal conduct by Mr. Telles-Rivera.

As Mr. Telles-Rivera dropped out of school after the tenth grade to help support his family, he would greatly benefit from vocational training.  He is interested in pursuing vocational training in auto mechanics and construction, so that he has a skillset to rely on once he returns to Colombia.  Mr. Telles-Rivera would also benefit from English reading, writing, and speaking classes while incarcerated.  As the lack of opportunity due to him not having a skillset that would allow him to secure gainful employment is largely responsible for his decision to accept the job transporting cocaine, he would be best served by being provided the requested vocational training.

## IV.    A DOWNWARD VARIANCE IS WARRANTED IN THIS CASE

The Court has discretion in fashioning the appropriate sentence for Mr. Telles-Rivera.  Booker, 543 U.S. 220, 245, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  "The district court has wide discretion to decide whether the section 3553(a) factors justify a variance."  United States v. Rodriguez, 628 F.3d 1258, 1264 (11th Cir. 2010).  "There is no requirement that a district court must impose an enhancement before granting a variance."  Id.

According to the United States Sentencing Commissions Fiscal year 2020 report, the national mean sentence for drug trafficking was 76 months and the median sentence was 60 months.[4]  However, in the Middle District of Florida the mean

---

[4] ussc.gov, United States Sentencing Commission, 2020 Federal Sentencing Statistics, Florida Middle, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2020/flm20.pdf (last visited 7/30/2021).

sentence for drug trafficking was 96 months and the median sentence was 87 months.[5] That translates into defendants in the Middle District of Florida receiving sentences in which the mean sentences were 26.3% higher and the median sentences were 45% higher than the national numbers.

Mr. Telles-Rivera was only responsible for transporting the cocaine for a short period of time.   Mr. Telles-Rivera did not participate in any planning or exercise any decision-making authority. According to ARK Behavioral Health, a kilo of cocaine is valued between $14,500 and $45,000 in the United States.[6] As such, the value of the shipment recovered in this case was between $10.3 and $32 million dollars. This results in Mr. Telles-Rivera's share of $5,324 approximately between 0.052% and 0.016% of the shipment's value. Ultimately, Mr. Telles-Rivera and his co-defendants were hired because they were desperate outsiders of no real value to the organization responsible for the drugs.

## V.    CONCLUSION

After the Court considers the arguments and analysis detailed above, there is sufficient evidence in mitigation to allow the Court to fashion a sentence either in departure, or via a variance from the advisory Sentencing Guidelines.   Specifically, Mr. Telles-Rivera respectfully requests that this Court utilize this memorandum to

---

[5] Id.
[6] ARK Behavioral Health, illicit-drugs, cocaine prices, https://www.arkbh.com/illicit-drugs/cocaine/prices/ (last visited on 8/2/2021).

impose a sentence of no more than eighty-seven (87) months with two (2) years of unsupervised release to follow.

DATED this 1st day of September 2021.

Respectfully submitted,

A. FITZGERALD HALL, Esq.
FEDERAL DEFENDER

*/s/ Percy King*
Percy King, Esq.
Assistant Federal Defender
Florida Bar No. 0107357
400 North Tampa Street, Suite 2700
Tampa, FL. 33602
Telephone: 813-228-2715
Email: Percy_King@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of September 2021, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Tereza Ohley, AUSA

*/s/ Percy King*
Percy King, Esq.
Assistant Federal Defender

10